UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAROLINA FERNANDEZ, Petitioner, -v- UNITED STATES OF AMERICA, Respondent. | 25 Civ. 2243 (PAE) 12 Cr. 8 (PAE) OPINION & ORDER |

PAUL A. ENGELMAYER, District Judge:

This decision resolves a petition for a writ of *coram nobis*, pursuant to the All Writs Act, 28 U.S.C. § 1651(a). In 2012, Carolina Fernandez, a non-citizen permanent resident, pled guilty before this Court to a single misdemeanor charge of possessing heroin, in violation of 21 U.S.C. §§ 812 and 844. Fernandez now petitions to vacate that conviction and thereby avoid its adverse immigration consequences under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq*. For the following reasons, the Court denies the petition.

## I. Background[1]

### A. Fernandez's Entry Into the United States and Her 2011 Arrest

Fernandez entered the United States from the Dominican Republic on September 17, 2005, as a lawful permanent resident. *See* Dkt. 1 ("Pet."), Ex. H ("PSR") ¶¶ 31, 36; *id.*, Ex. G ("NTA").[2]

[1] The Court draws this account from Fernandez's petition and attached exhibits, Dkt. 1; the Government's opposition and attached exhibits, Dkt. 7; Fernandez's reply and attached exhibits, Dkt. 11; and an additional letter from Fernandez and attached exhibits, Dkt. 12.

[2] The record does not reflect whether Fernandez entered the United States legally. PSR ¶ 36.

On the morning of November 3, 2011, Drug Enforcement Administration ("DEA") agents conducted surveillance of a Bronx residence (the "residence"), which consisted of two apartments sharing one main entrance. PSR ¶ 10(a). The agents observed a Louis Martinez leave the residence with a bag, drive a short distance, discard the bag in a dumpster, and return to the residence. *Id.* ¶ 10(b)–(d). A search of the discarded bag revealed empty glassine envelopes and surgical masks—evident paraphernalia of heroin or cocaine dealers. *Id.* ¶ 10(e).

Later that morning, Fernandez, her then-boyfriend (and now husband) Franchy Moncion, and another person exited the residence and got into a taxi. *Id.* ¶ 10(f). DEA agents conducted a traffic stop of the taxi. *Id.*; Pet. at 3. None of the passengers had identification; all three falsely denied having come from the residence. PSR ¶ 10(f). Marks on Fernandez's face indicated that she had recently worn a surgical mask, and her fingers were discolored and yellowish, consistent with the recent handling of large amounts of heroin. *Id.* The agents arrested Fernandez. *Id.* ¶ 14. At the precinct, a small package of heroin was discovered in her shoe. *Id.* ¶ 10(f). Fernandez waived her *Miranda* rights and admitted packaging heroin powder into glassine envelopes and taping the envelopes shut on the first floor of the residence. *Id.* ¶ 14. After a person at the residence consented to a search, agents recovered glassine envelopes, bundles of cash, more than six kilograms of heroin, and packaging materials on the first floor. *Id.* ¶¶ 10(k)–13.

### B. Fernandez's 2012 Prosecution, Guilty Plea, and Sentencing

On January 4, 2012, a grand jury indicted Fernandez and a co-defendant for conspiring to distribute, and to possess with intent to distribute, one kilogram or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. *United States v. Fernandez*, 12 Cr. 8 (PAE),

Dkt. 33 at 1 (S.D.N.Y. Jan. 4, 2012). Fernandez retained Curtis J. Farber, Esq. to represent her in the criminal proceeding.

On January 30, 2012, Farber wrote the Government to request a deferred prosecution agreement or a misdemeanor disposition. The letter emphasized Fernandez's fear of incarceration and deportation. Dkt. 7 ("Opp'n"), Ex. A ("Jan. 2012 Ltr."). It stated:

> [Fernandez] is not only afraid of how she has potentially jeopardized her freedom and ability to remain in this country, but additionally is saddened by just how adrift she is from the values upon which she has been raised (most family members are Evangelical Christians). Most importantly, [] Fernandez is consumed with guilt about how her actions will impact upon her young child—either from not being able to be there for him if incarcerated, and, if she is deported, having to choose between giving her son up or taking him with her back to a country [where] there is nothing to offer.

*Id.* at 2.

On May 25, 2012, Fernandez moved to suppress her post-arrest confession and the heroin recovered from her person. She argued that the agents lacked probable cause to arrest her and that the allegedly unlawful arrest tainted her confession. 12 Cr. 8, Dkt. 44 at 10–13.

On June 28, 2012, while the motion was pending, Fernandez pled guilty before this Court to a one-count misdemeanor information that charged her with heroin possession, in violation of 21 U.S.C. §§ 812 and 844. Pet., Ex. D ("Plea Tr."). In pertinent part, the plea agreement stated:

> The defendant recognizes that because she is not a citizen of the United States, her guilty plea and conviction make it very likely that her deportation from the United States is presumptively mandatory and that, at a minimum, she is at risk of being deported or suffering other adverse immigration consequences. The defendant acknowledges that she has discussed the possible immigration consequences (including deportation) of her guilty plea and conviction with defense counsel. The defendant affirms that she wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction, even if those consequences include deportation from the United States. It is agreed that the defendant will have no right to withdraw her guilty plea based on any actual or perceived adverse immigration consequences (including deportation) resulting

> from the guilty plea and conviction. It is further agreed that the defendant will not challenge her conviction or sentence on direct appeal, or through litigation under Title 28, United States Code, Section 2255 and/or Section 2241, on the basis of any actual or perceived adverse immigration consequences (including deportation) resulting from her guilty plea and conviction.

Opp'n, Ex. C ("Plea Agreement") at 5.

At the plea hearing, at which Fernandez was under oath and assisted by a Spanish translator, *see* Plea Tr. at 1, she stated that, before signing the plea agreement, it had been translated to her and she had discussed it with her attorney. *Id.* at 14–15. She stated that she had had a sufficient opportunity to discuss with Farber the case, the charge to which she intended to plead guilty, any possible defenses to that charge, and the consequences of entering a guilty plea. *Id.* at 6. Farber stated that he did not "know of any valid defense that would prevail at trial or any reason why [Fernandez] should not be permitted to plead guilty." *Id.* at 19. Fernandez stated that she was satisfied with Farber's representation, including with respect to the plea agreement. *Id.* at 6.

The Court specifically inquired of Fernandez about the immigration consequences of a guilty plea:

> THE COURT: Do you understand that a plea of guilty to this crime will make it far easier for the government to deport you?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand that if I accept your plea and adjudge you guilty there may be adverse effects on your immigration status, including further detention after completion of your service and also possibly removal?
>
> THE DEFENDANT: Yes.

*Id.* at 11. Government counsel, in summarizing the plea agreement, reiterated the point, stating that Fernandez "also recognizes in the [plea] agreement that because she is not a citizen of the

United States, her guilty plea and conviction may have . . . adverse consequences as to her remaining in the United States." *Id.* at 16 (cleaned up).

At the close of the proceeding, the Court accepted Fernandez's guilty plea. *Id.* at 19–20. Because Farber was slated soon to become a New York state judge, the Court appointed Harry J. Rimm, Esq. to represent Fernandez for the balance of the case. *Id.* at 20–21. In light of the plea, Fernandez withdrew her suppression motion. *See* 12 Cr. 8, Dkt. 45.

On October 12, 2012, Fernandez filed her sentencing submission. Pet., Ex. F at 1. Her counsel urged a probationary sentence, including because "Fernandez is a permanent resident and understands that she may be at risk of being deported or suffering other adverse immigration consequences following sentencing." *Id.* at 3 (citation omitted).

On October 19, 2012, the Court sentenced Fernandez to two years' probation and to pay a $1,000 fine. Pet., Ex. E ("Sent'g Tr.") at 18–19. Among its reasons, the Court stated, was the "reality that there may be adverse immigration consequences" from the conviction. *Id.* at 18. Consistent with the plea agreement, Fernandez did not challenge her conviction, directly or collaterally, until this lawsuit.

**C. Fernandez's 2013–2025 Immigration Proceedings**

On June 25, 2013, the Department of Homeland Security ("DHS") issued a Notice to Appear to Fernandez, alleging that she was removable, based on her 2012 narcotics conviction. NTA at 1. In late 2014, Fernandez retained Melvin R. Solomon, Esq. as immigration counsel. Pet., Ex. M ("Solomon Decl.") ¶¶ 2–3. Solomon has represented Fernandez throughout her removal proceedings. *Id.*

On January 16, 2015, an immigration judge ("IJ") scheduled a hearing for July 24, 2015, later continued to March 31, 2017. *Id.* ¶ 6. At the March 31 hearing, Solomon stated that

Fernandez would file for cancellation of removal under INA § 240A(a). *Id.* The IJ scheduled a hearing on that submission for March 19, 2018. The matter was later reassigned to another IJ and the hearing was adjourned to October 1, 2020. *Id.* ¶ 7. Due to the COVID-19 pandemic, the hearing was adjourned *sine die*. *Id.*

In the interim, Fernandez's husband, Moncion, became an American citizen. *Id.* ¶ 8.[3] In March 2020, while Fernandez's § 240A(a) hearing was pending, Moncion filed a Form I-130, or "Petition for Alien Relative," to allow Fernandez to adjust her immigration status. *Id.* ¶¶ 8–9. In later proceedings, DHS notified Fernandez that, in its view, she may not be eligible for cancellation of removal under § 240A(a), because, before her November 3, 2011 narcotics offense, she had resided in the United States for approximately six years, short of the required seven. *Id.* ¶ 10.[4] Solomon, however, took the position that Fernandez remained eligible for adjustment under INA § 245, under which immediate relatives of U.S. citizens can qualify for an adjustment of status even if they have overstayed their visa. *Id.*

In late 2024, while preparing the application to adjust her immigration status under INA § 245 and with a hearing scheduled for March 4, 2025, Solomon realized that Fernandez's 2012 conviction rendered her inadmissible under INA § 212(a)(2)(A)(i)(II) and independently might block her from obtaining an adjustment of status. *Id.* ¶ 12.[5] Solomon advised her to speak with an attorney about a *coram nobis* petition. *Id.* Fernandez and Moncion attest that, in December 2024, they were advised for the first time to seek post-conviction relief. Pet., Exs. J ("Fernandez

[3] The record does not reflect when this occurred. Solomon Decl. ¶ 8.

[4] The record does not reflect when the DHS attorney conveyed such information to Fernandez, Moncion, or Fernandez's counsel. Solomon Decl. ¶ 10.

[5] Solomon errantly refers to this provision as INA § "212(2)(A)(1)(II)," which does not exist.

Decl.") ¶ 7, K ("Moncion Decl.") ¶ 4. They raised funds to retain Labe M. Richman, Esq., who, in February 2025, began to work on the instant petition. *Id*.

At the March 4, 2025 hearing, both the DHS attorney and the IJ stated that Fernandez's narcotics conviction made her ineligible for adjustment of status or other relief under § 212(a)(2)(A)(i)(II). Solomon Decl. ¶ 13. This hearing, Solomon attests, "was the first time that the issue of such inadmissibility was formally raised" in Fernandez's immigration proceedings. *Id.*

On September 10, 2025, an IJ terminated Fernandez's adjustment of status application, finding her ineligible for such relief. Dkt. 12 ("Sept. 22 Ltr."), Ex. R ("Sept. 10 Order") at 1. The IJ ordered Fernandez removed from the United States, pursuant to the NTA. *Id.* Fernandez's removal has been stayed, pending her immigration appeal. *See* Sept. 22 Ltr. at 1.

### D. The Instant Petition

On March 18, 2025, Fernandez filed the instant petition for a writ of *coram nobis*, attaching exhibits. Dkt. 1. On June 2, 2025, the Government opposed, attaching exhibits. Dkt. 7 ("Opp'n"). On June 27, 2025, Fernandez replied. Dkt. 11 ("Reply"). On September 22, 2025, Fernandez submitted an update concerning her immigration proceedings. Sept. 22 Ltr.

## II. Applicable Legal Standards

*Coram nobis* is a "remedy of last resort for petitioners who are no longer in custody pursuant to a criminal conviction and therefore cannot pursue direct review or collateral relief by means of a writ of habeas corpus." *Fleming v. United States*, 146 F.3d 88, 89–90 (2d Cir. 1998). Federal courts derive their authority to issue the writ from the All Writs Act, 28 U.S.C. § 1651(a). *United States v. Denedo*, 556 U.S. 904, 911 (2009).

To obtain *coram nobis* relief, a petitioner must demonstrate that "(1) there are circumstances compelling such action to achieve justice, (2) sound reasons exist for failure to

seek appropriate earlier relief, and (3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." *Kovacs v. United States*, 744 F.3d 44, 49 (2d Cir. 2014) (quoting *Foont v. United States*, 93 F.3d 76, 79 (2d Cir. 1996)); *accord Fleming*, 146 F.3d at 90. "The burden is a heavy one because a court reviewing a petition for *coram nobis* relief 'must presume that the proceedings were correct, and the burden of showing otherwise rests on the petitioner.'" *United States v. Rutigliano*, 887 F.3d 98, 108 (2d Cir. 2018) (quoting *United States v. Mandanici*, 205 F.3d 519, 524 (2d Cir. 2000)).

In deference to the finality of judgments, *see United States v. Morgan*, 346 U.S. 502, 511 (1954), "judgment finality is not to be lightly cast aside; and courts must be cautious so that the extraordinary remedy of *coram nobis* issues only in extreme cases," *Denedo*, 556 U.S. at 916. Accordingly, a petition may be granted only where "extraordinary circumstances are present." *Foont*, 93 F.3d at 78 (quoting *Nicks v. United States*, 955 F.2d 161, 167 (2d Cir. 1992)). Such relief is "strictly limited to those cases in which errors of the most fundamental character have rendered the proceeding itself irregular and invalid." *Mandanici*, 205 F.3d at 524.

## III. Discussion

In pursuing a writ of *coram nobis* vacating her 2012 conviction, Fernandez argues that her guilty plea resulted from her attorneys' ineffective assistance. She argues that her counsel before this Court did not adequately warn her that her conviction would cause her deportation, in violation of *Padilla v. Kentucky*, 559 U.S. 356 (2010). Had she known deportation was mandatory, she states, she would have pressed her suppression motion and proceeded to trial, instead of pleading guilty.

The Court first addresses the second and third *coram nobis* elements, which Fernandez satisfies, before turning to the first, which she does not.

### A. Second Element: Whether Sound Reasons Justified Fernandez In Not Seeking Relief Earlier

A *coram nobis* petition may be denied "[i]f the district court decides that there was not sufficient justification for [the petitioner's] failure to seek appropriate relief at an earlier time." *Foont*, 93 F.3d at 80. Although "[n]o statute of limitations governs the filing of a *coram nobis* petition," *Kovacs*, 744 F.3d at 54, "[t]he critical inquiry . . . is whether the petitioner is able to show justifiable reasons for the delay," *Doe v. United States*, 915 F.3d 905, 915 (2d Cir. 2019) (quoting *Foont*, 93 F.3d at 79–80). In undertaking that inquiry, courts consider "whether the petitioner knew or should have known earlier of facts underlying the claim for *coram nobis* relief." *United States v. Hernandez*, 283 F. Supp. 3d 144, 153 (S.D.N.Y. 2018) (quoting *Nangia v. United States*, No. 11 Civ. 6056, 2012 WL 4513477, at *3 (S.D.N.Y. Oct. 2, 2012)). Timeliness "must be determined on a case-by-case basis, with full regard for the attendant circumstances." *Nicks v. United States*, 835 F. Supp. 151, 153 (S.D.N.Y. 1993).

The Government argues that Fernandez's petition—filed nearly 13 years after her conviction by guilty plea—is untimely because the 2013 NTA, which charged her as removable based on the conviction, put her on notice of the facts underlying her present claim.

Notwithstanding the long period between the 2013 NTA and the *coram nobis* petition, the Court finds Fernandez justified in not filing the petition sooner. Fernandez attests that, until late 2024, she did not know that her 2012 conviction foreclosed discretionary relief, making her removal mandatory. In a declaration, Fernandez states that, during her prosecution in 2011 and 2012, she did not learn that deportation was mandatory. She states that she "understood that there could be some problems [regarding her immigration status] but [believed] that I could avoid being deported." Fernandez Decl. ¶ 6. She adds that, after receiving the NTA, her attorney, Solomon, "gave me hope that I would avoid deportation," and that an IJ likewise

indicated during her immigration proceedings that she was "eligible to get relief from deportation." *Id.* ¶ 7. Only in December 2024, she states, did she learn that deportation was mandatory, due to her conviction. *Id.* At that time, Fernandez states, she promptly got "some money together to hire" Richman to "start on the [*coram nobis*] petition at the beginning of February 2025." *Id.*

Fernandez's account is consistent with Solomon's. He avers that, from when Fernandez retained him in late 2014 until late 2024, he believed, and told Fernandez, that she potentially could avoid deportation, and counseled her in her immigration proceedings based on that mistaken view. *See* Solomon Decl. ¶¶ 2–5, 10, 11–13. Fernandez's account is not refuted by the plea agreement, which stopped short of labeling her deportation mandatory, stating instead that the guilty plea would make it "very likely that her deportation is presumptively mandatory,"[6] nor by the plea colloquy, which warned her of the heightened prospect of removal without stating that it was mandatory.

Fernandez's immigration proceedings corroborate that she and her counsel long believed her deportation might be avoidable. In 2017, she filed for cancellation of removal under INA § 240A(a). *Id.* ¶ 6. The multiple adjournments of that hearing, by multiple IJs, were for reasons including the pandemic; the record does not suggest that these were instigated by Fernandez. *Id.* ¶¶ 6–7. Even after a DHS attorney indicated that Fernandez might not be eligible for such relief

[6] The plea agreement stated that Fernandez's conviction made it "very likely that her deportation is presumptively mandatory and that, at a minimum, she is at risk of being deported or suffering other adverse immigration consequences." *See Chowdhary v. United States*, No. 11 Cr. 859, 2015 WL 273728, at *6 (S.D.N.Y. Jan. 22, 2015) (finding similarly qualified language in a plea agreement accurate, notwithstanding that the defendant's deportation proved mandatory, because "[n]either the Court nor the Government . . . could predict the future," and "immigration authorities could mistakenly fail to remove [defendant] from the United States, or legislative or executive action could change the enforcement of immigration laws").

under § 240A(a), Solomon continued to prepare an application under § 245 for adjustment of status. *Id.* ¶¶ 10–12. The record does not suggest that Fernandez deferred seeking this relief for tactical reasons. There was no tactical reason to delay. On the contrary, a successful application, if filed earlier, could only have assisted her with respect to her then-pending status adjustment applications before immigration authorities.

In reasonably analogous circumstances, courts in this Circuit have found *coram nobis* petitions timely. *See, e.g.*, *Doe*, 915 F.3d at 910 (five-year delay justified, where petitioner reasonably relied for years on assurances immigration issues would resolve, and acted promptly after discovering they would not); *Kovacs*, 744 F.3d at 54 (petition filed a decade after conviction was timely, where it was "improbable" that petitioner or his attorney would have recognized value of "arcane" and "ancient" *coram nobis* mechanism, and there had been no tactical reason to delay); *Yong Wong Park v. United States*, 222 F. App'x 82, 83 (2d Cir. 2007) (summary order) (nearly five-year delay justified, where it became apparent only years after guilty plea that deportation was mandatory); *Hernandez,* 283 F. Supp. 3d at 154 (petition timely notwithstanding nine-year delay, where delay had been caused by immigration counsel's mishandling of removal proceedings and petitioner acted promptly upon receiving correct advice); *United States v. Ferrera*, No. 10 Cr. 892, 2020 WL 7342673, at *7 (S.D.N.Y. Dec. 14, 2020) (three-year delay justified, where petition filed promptly after immigration counsel informed petitioner of *coram nobis* writ); *Medina v. United States*, 12 Civ. 238, 2012 WL 742076, at *2 (S.D.N.Y. Feb. 21, 2012) (petition filed 25 years after conviction timely, where petitioner attested he "recently learned" his guilty plea required deportation). The Court thus finds Fernandez's petition timely.

### B. Third Element: Whether Fernandez Continues to Suffer Legal Consequences From Her Conviction

*Coram nobis* requires a petitioner to show she "continues to suffer legal consequences from [her] conviction that may be remedied by granting of the writ." *Foont*, 93 F.3d at 79 (quoting *Nicks*, 955 F.2d at 167). That element is undisputedly met. On the record before the Court, Fernandez's removability and impending deportation appear to derive exclusively from her narcotics conviction. *See Kovacs*, 744 F.3d at 49 ("no doubt that [petitioner's] likely ineligibility to reenter the United States constitutes a continuing consequence of his conviction"); *Hernandez,* 283 F. Supp. 3d at 154 (petitioner's "imminent deportation satisfies this element"); *Ferrera*, 2020 WL 7342673 at *8 (notwithstanding that petitioner's deportation proceedings were administratively stayed, he was "very much suffering the legal consequences of his conviction" because he could be deported were the stay lifted). The Court thus finds that Fernandez continues to suffer legal consequences resulting from her conviction.

### C. First Element: Whether a Grant of *Coram Nobis* Is Required to Achieve Justice

The first element of *coram nobis*—that granting the writ is required to achieve justice—presents, however, a hurdle that Fernandez cannot clear. She argues that her three previous attorneys—her criminal defense attorneys Farber and Rimm, and her immigration attorney Solomon—all rendered ineffective assistance to her. These attorneys, she states, failed to advise her that deportation, as a result of her conviction, was mandatory and certain. She states that, had she appreciated that, she would not have pled guilty, and instead would have litigated her motion to suppress her confession and the heroin found in her shoe, and would have had viable defenses at trial.

A finding of ineffective assistance of counsel ("IAC") in violation of the Sixth Amendment can sometimes justify a grant of *coram nobis* as a necessary means to achieve

justice. *Doe*, 915 F.3d at 910; *see also Kovacs*, 744 F.3d at 49; *Chhabra v. United States*, 720 F.3d 395, 406 (2d Cir. 2013). To establish an IAC claim, a defendant must show that (1) defense counsel's performance fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *see also Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (*Strickland* test applies to guilty plea challenges). The *Strickland* standard is "highly demanding," and the IAC claim "must be rejected if the defendant fails to meet either the performance prong or the prejudice prong." *Bennett v. United States*, 663 F.3d 71, 85 (2d Cir. 2011) (citations omitted).

Fernandez here, however, has not established either prong of *Strickland*.

### 1. Whether the Performance of Fernandez's Counsel Was Objectively Unreasonable

To satisfy the first *Strickland* prong, a defendant must show that her attorney's performance was "so deficient that, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Chhabra*, 720 F.3d at 406 (citation omitted). The attorney must have made "errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Such errors include "omissions [that] cannot be explained convincingly as resulting from a sound trial strategy, but [that] instead arose from oversight, carelessness, ineptitude, or laziness." *Wilson v. Mazzuca*, 570 F.3d 490, 502 (2d Cir. 2009) (quoting *Eze v. Senkowski*, 321 F.3d 110, 112–13 (2d Cir. 2003)).

With respect to immigration consequences from criminal convictions, counsel must inform a non-citizen client whether the client's guilty plea carries a "risk of deportation." *Padilla*, 559 U.S. at 374. Counsel's failure to do so constitutes objectively unreasonable conduct under *Strickland*. *Id*. at 371 ("It is quintessentially the duty of counsel to provide her client with

available advice about an issue like deportation, and the failure to do so clearly satisfies the first prong of the *Strickland* analysis." (citation omitted)). Where a non-citizen defendant's removal is "presumptively mandatory," however, it is not objectively unreasonable, or a violation of *Padilla*, for counsel to advise the client that removal is "likely" or "very likely." *See De Goorte v. United States*, No. 22-2324, 2023 WL 7293269, at *3 (2d Cir. Nov. 6, 2023) (summary order); *see also Marte v. United States*, 952 F. Supp. 2d 537, 541 n.2 (S.D.N.Y. 2013) ("[T]his District, post *Padilla*, has denied ineffective assistance of counsel claims, even for mandatory deportation, where the petitioner affirmed his understanding of the potential for deportation during the plea allocution."); *Chowdhary*, 2015 WL 273728 at *6 (same).

At the outset, the Court notes that, given the basis for her petition, Fernandez's broadsides against her immigration counsel, Solomon, are beside the point. Farber and Rimm alone represented Fernandez in her criminal case. Solomon was retained two years after Fernandez's sentencing and did not represent her in the criminal case. Any advice by him thus logically could not have informed her decision to plead guilty. And the Sixth Amendment right to counsel does not extend to removal proceedings. *See Debeatham v. Holder*, 602 F.3d 481, 484 (2d Cir. 2010).

Here, the record conclusively establishes, in multiple respects, that Fernandez was repeatedly and adequately warned of the risks of deportation resulting from her guilty plea. At the plea hearing, Fernandez confirmed that she had read and understood the plea agreement, and discussed it with Farber, before willingly signing it. Plea Tr. at 14–15. She also stated that she was satisfied with Farber's representation of her, including with respect to the plea agreement. *Id.* at 6. And that agreement, which Fernandez admitted having read before signing it, stated: "The defendant recognizes that because she is not a citizen of the United States, her guilty plea

and conviction make it very likely that her deportation from the United States is presumptively mandatory and that, at a minimum, she is at risk of being deported." Plea Agreement at 5. It added that Fernandez "acknowledges that she has discussed the possible immigration consequences (including deportation) of her guilty plea and conviction with defense counsel." *Id.* And, it stated, Fernandez "affirms that she wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction, even if those consequences include deportation from the United States." *Id.*

The ensuing plea proceeding confirmed Fernandez's appreciation of the risk that her plea would cause her removal. In response to questioning from the Court, Fernandez, under oath, acknowledged understanding that her guilty plea would "make it far easier" for the Government to deport her, and that "there may be adverse effects on [her] immigration status," including "further detention" and "removal." Plea Tr. at 11. The Government also reiterated, in summarizing the plea agreement, that her conviction could have "adverse consequences as to her remaining in the United States." *Id.* at 16 (cleaned up). Fernandez nonetheless thereafter reiterated her intention to plead guilty—and did so. *Id.* at 17, 19–20.

The contemporaneous records of the guilty plea thus demonstrate that Fernandez was warned, and unequivocally acknowledged, the risk that her guilty plea would bring about her deportation. Other records from the criminal case drive home the point. On January 30, 2012—months before the guilty plea—Farber wrote a letter to the U.S. Attorney's Office, advocating for leniency (a deferred prosecution or a misdemeanor disposition). Jan. 2012 Ltr at 1. He wrote that Fernandez was "consumed with guilt" about the prospect that, "if she is deported," she would have "to choose between giving her son up or taking him with her" to the Dominican

Republic. *Id.* at 2. And Fernandez's October 12, 2012 sentencing submission invoked the risk of deportation in urging a non-custodial sentence. Pet., Ex. F at 3.

In the face of this formidable record, Fernandez is forced to argue that, although she was repeatedly notified of and acknowledged the risk of deportation, *Padilla* required that she have been notified by counsel that deportation was mandatory and a certainty. The Court assumes *arguendo* that defense counsel stopped short of making such an ironclad declaration to Fernandez.[7] But under settled case law, the absence of such a statement does not constitute ineffective assistance under *Padilla*. On the contrary, courts in this Circuit have repeatedly held that where, as here, a defendant has been advised that deportation is likely or presumptively mandatory, *Padilla* does not require counsel to advise the defendant that deportation is inevitable. *See, e.g.*, *De Goorte*, 2023 WL 7293269, at *3 (counsel's advice that removal was "likely" or "very likely" did not violate *Padilla,* where defendant's removal presumptively mandatory); *Chowdhary*, 2015 WL 273728 at *1, 3, 6 (rejecting IAC claim based on ostensible failure to advise defendant of mandatory deportation, where plea agreement contained materially identical provision as here—*i.e.*, that "guilty plea and conviction make it very likely that his deportation . . . is presumptively mandatory"—and defendant acknowledged during plea hearing he could be removed and had discussed immigration consequences with counsel); *Ottenwarde v. United States*, No. 12 Civ. 6537, 2013 WL 1242632, at *1 (S.D.N.Y. Mar. 28, 2013) (denying IAC claim where defendant subject to mandatory deportation stated during plea hearing that he

[7] Fernandez attests that, during her criminal case, "no one told me I was deportable with no remedy and that deportation would be mandatory." Fernandez Decl. ¶ 6. Farber and Rimm state that they do not recall their conversations with her and do not have records of them. *See* Pet., Ex. N at 157 (February 6, 2025 email from Farber, stating that he does "not have a recollection of the above-referenced case"); *id.* at 158 (February 4, 2025 email from Rimm, stating that he has "no recollection of any details or facts from the case or representation," and "no documents from her case").

understood deportation possible); *Roy v. United States*, 347 F. Supp. 3d 230, 237–38 (S.D.N.Y. 2018) (same, where counsel advised defendant of "likely" deportation and plea agreement warned that deportation presumptively mandatory); *Brudi v. United States*, No. 14 Civ. 962, 2014 WL 6390302, at *4 (S.D.N.Y. Nov. 17, 2014) ("[C]ourts in this District have interpreted the Supreme Court's holding in *Padilla* . . . as requiring only that counsel inform her client whether his guilty plea carries a risk of deportation," not that conviction would result in such (citation omitted)); *Marte*, 952 F. Supp. 2d at 541 n.2 ("[T]his District, post *Padilla*, has denied ineffective assistance of counsel claims, even for mandatory deportation, where the petitioner affirmed his understanding of the potential for deportation during the plea allocution.").

And this case is a very far cry from those finding *Padilla* violations. Such have involved assurances by counsel that deportation would not occur, or a failure to warn the defendant of the risk of any adverse immigration consequence. *See, e.g.*, *Doe*, 915 F.3d at 910–11 (IAC where counsel assured defendant, who faced mandatory deportation, that he would not be deported, and later admitted ignorance of immigration law); *Rodriguez v. United States*, 730 F. App'x 39, 42 (2d Cir. 2018) (summary order) (same, where counsel advised defendant "she need not worry about immigration consequences," notwithstanding substantial risk of denaturalization); *Ferrera*, 2020 WL 7342673, at *3 (same, where counsel assured defendant facing mandatory deportation that his Cuban nationality placed him in "better shape" and that immigration status would "not be a problem"); *Hernandez*, 283 F. Supp. 3d at 147, 151 (same, where counsel incorrectly assured defendant, who took guilty plea only because she was told she could retain LPR status, that such would not cause her to lose that status). The record here does not reflect anything of

the sort.[8] And Solomon's later advice to Fernandez that there was a potential path to remaining in the United States notwithstanding her conviction postdated her plea (and sentencing) and could not have brought the plea about.

Fernandez has thus not established that defense counsel's performance was objectively unreasonable under *Strickland*. To the contrary, it fully comported with *Padilla*. Fernandez's *coram nobis* petition fails on this basis alone.

### 2. Whether Any Deficient Performance Prejudiced Fernandez

In any event, Fernandez's claim also founders on *Strickland*'s second prong.

To establish prejudice, a petitioner "must clearly demonstrate that [s]he placed particular emphasis on immigration consequences in deciding whether or not to plead guilty," and must show that, "but for counsel's unprofessional errors, there was a reasonable probability that the petitioner could have negotiated a plea that did not impact immigration status or that [s]he would have litigated an available defense." *Kovacs*, 744 F.3d at 52 (cleaned up); *accord Doe*, 915 F.3d at 911. Courts "should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies," but "should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 582 U.S. 357, 369 (2017). Courts need not accept improbable, self-serving, and/or uncorroborated statements by a petitioner as true. *See United States v. Gordon*, 156 F.3d 376,

---

[8] *United States v. Al Halabi*, 633 F. App'x 801 (2d Cir. 2015) (summary order), is in accord. It held that "where the law clearly dictates that removal is presumptively mandatory, a defense attorney's failure to advise his client of that fact falls below an objective standard of reasonableness." *Id.* at 803. The plea agreement here—signed by defense counsel—explicitly stated, consistent with *Al Halabi*, that it was "very likely" that deportation was "presumptively mandatory." In any event, the Circuit in *Al Halabi* held that, even if defense counsel there had rendered ineffective assistance by advising the defendant merely that he "may" be deported, the defendant had failed to show prejudice from counsel's use of that formulation. *Id*.

380–81 (2d Cir. 1998) (defendant must provide "some further objective evidence" beyond "self-serving, post-conviction testimony" to show IAC (citation omitted)); *Grullon v. United States*, No. 99 Civ. 1877, 2004 WL 1900340, at *17 (S.D.N.Y. Aug. 24, 2004) (similar); *Grecco v. United States*, No. 14 Cr. 760, 2023 WL 6294334, at *7 (S.D.N.Y. Sept. 27, 2023) (petitioner's "conclusory, self-serving claim, lacking any corroboration" inadequate basis to support IAC claim).

Fernandez has not shown any prejudice resulting from any ostensible shortcoming in the advice she received as to the immigration consequences of her plea. The Court credits Fernandez that she considered the possibility of adverse immigration consequences in deciding whether to plead guilty. *See* Fernandez Decl. ¶ 6 ("I never would have taken this plea of guilty had I known the truth," *i.e.*, that her deportation would be certain). But the record does not support a finding that either form of prejudice recognized by *Kovacs* occurred here.

First, Fernandez does not argue—let alone adduce evidence supporting—that, "but for counsel's unprofessional errors, there was a reasonable probability that [she] could have negotiated a plea that did not impact [her] immigration status." *Kovacs*, 744 F.3d at 52. She was charged with conspiring to distribute, and to possess with intent to distribute, one kilogram or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. There was powerful evidence of her guilt. She had been arrested with heroin hidden in her shoe, shortly after leaving a residence where, as she admitted in a *Mirandized* post-arrest interview, she had been packaging heroin powder into glassine envelopes. PSR ¶¶ 10(f), 14. There is no basis to assume that the Government would have been amenable to a lesser disposition (such as a deferred prosecution) than the misdemeanor plea, to which the Government agreed after reviewing her bid for leniency. And the misdemeanor conviction carried comparable immigration consequences to the

felony charge she avoided. Pet. at 15–16. Nor has Fernandez identified any offense without such immigration consequences for which the facts would have supported a guilty plea. *See, e.g.*, *Matos v. United States*, 907 F. Supp. 2d 378, 382–83 (S.D.N.Y. 2012) (finding no prejudice where there was not "any reasonable probability that [petitioner] would have proceeded to trial rather than accept the Government's offer," given overwhelming evidence of guilt, and where "[p]roceeding to trial would not have altered the immigration consequences"); *Roy*, 347 F. Supp. 3d at 238–39 & n.3 (rejecting claim that counsel should have negotiated a plea to a different count to avoid mandatory removal, where the alternative count carried a two-year mandatory minimum contrary to petitioner's stated goal of minimizing incarceration, and where "petitioner provide[d] no evidence that the Government would have agreed to such a plea"); *Alamgir v. United States*, No. 20 Civ. 215, 2023 WL 5806234, at *9 & n.5 (E.D.N.Y. Sept. 7, 2023) (rejecting *Padilla*-based prejudice claim where petitioner failed to "demonstrate a reasonable probability that the prosecution would have accepted, and the court would have approved, a deal that had no adverse effect on the petitioner's immigration status"); *cf. Ferrera*, 2020 WL 7342673, at *4–5 (finding prejudice where the record supported a reasonable probability of a plea to an offense without mandatory immigration consequences).

As to *Kovacs*' second prong, Fernandez suggests that, had she not pled guilty, she stood to prevail on a viable defense, to wit, her motion to suppress her *Mirandized* confession and the heroin recovered from her shoe at the time of arrest. *Kovacs*, 744 F.3d at 52. The record refutes that self-serving claim. Fernandez initially made such a motion, *see* 12 Cr. 8, Dkt. 44 at 10–13, but she abandoned it in pleading guilty, attesting that she had had a "sufficient opportunity to discuss . . . any possible defenses" to the charge she would shortly plead guilty to. Plea Tr. at 6. Farber, in turn, averred that he did not "know of any valid defense that would prevail at trial or

any reason why [his] client should not be permitted to plead guilty." *Id.* at 19. She thus withdrew the motion. 12 Cr. 8, Dkt. 45 at 1. And Fernandez obtained a substantial benefit from the plea: the opportunity to plead to a misdemeanor offense of possession, in lieu of the pending felony charge under which a term of imprisonment was considerably more likely. *See, e.g.*, *Thomas v. United States*, No. 01 Cr. 579 (PAE), 2020 WL 3428148, at *5 (S.D.N.Y. June 23, 2020) (denying *coram nobis* petition, where petitioner did not identify colorable defense or show a reasonable probability he would have proceeded to trial); *United States v. Davilmar*, No. 99 Cr. 605, 2023 WL 5743805, at *5 (S.D.N.Y. Sept. 6, 2023) (same); *Matos*, 907 F. Supp. 2d at 383–84 (same); *Lozano v. United States*, 436 F. Supp. 3d 772, 777 (S.D.N.Y. 2020) (petitioner "not credible when he states that he would have gone to trial . . . had he known of the immigration consequences of a conviction," where petitioner faced "strong possibility of a conviction and the possibility of an additional period of incarceration without any realistic advantage from proceeding to trial." (cleaned up)), *aff'd*, 802 F. App'x 651 (2d Cir. 2020) (summary order).

Fernandez counters by claiming that (1) her confession was coerced by DEA agents' threats to take away her child if she did not cooperate, and (2) the agents did not honor her request for counsel, in violation of *Edwards v. Arizona*, 451 U.S. 477 (1981). Pet. at 17–18; *see also* Fernandez Decl. ¶¶ 4–5. Fernandez, tellingly, did not make any such claim in moving in 2012 to suppress the confession. That claim is supported only by declarations by Fernandez and her husband in support of the instant petition. Fernandez does not explain why she did not come forward with these claims in moving to suppress. The Court need not, and does not, credit these self-serving claims. *Grecco*, 2023 WL 6294334, at *7; *Grullon*, 2004 WL 1900340, at *6.

Fernandez has thus not satisfied either *Strickland* prong. Granting *coram nobis* relief is not required to achieve justice here.

**D. Whether an Evidentiary Hearing Is Warranted**

Courts deny *coram nobis* petitions without a hearing where the petitioner's claims are uncorroborated and a hearing would not materially supplement the written record. *See United States v. Carlino*, 400 F.2d 56, 57–58 (2d Cir. 1968) (no hearing necessary, where defendant failed to raise "material issue of fact on a claim of constitutional dimensions"); *United States v. Wolfson*, 558 F.2d 59, 65–66 (2d Cir. 1977) (same, where such would have "presented little, aside from [petitioner's] own speculations, in support of the claim"); *Foster v. United States*, 581 F. App'x 105, 106 (2d Cir. 2014) (summary order) (same, where testimony "would be little more than a 'swearing match' and add little or nothing to the written affidavits").

So, too, here. Fernandez's arguments rest overwhelmingly on declarations by her and her husband that are so transparently self-serving that, absent corroboration, it is not plausible that the Court would credit them. Farber and Rimm have stated that they do not recall her case (and therefore not her newfound claims). *See* Pet., Ex. N at 1–2. Solomon's declaration is also beside the point. An evidentiary hearing would not materially develop the relevant record here, and thus is unwarranted. And, on the first prong of *Strickland*, which alone is decisive, the plea agreement, transcripts of the plea and sentencing hearings, and counsel's contemporaneous correspondence conclusively establish that Fernandez was adequately advised, under *Padilla*, of the risk of deportation.

**E. Overall Assessment**

Because Fernandez was adequately advised, consistent with *Padilla*, of the potential adverse consequences of her plea to her immigration status, including that deportation was "very likely" "presumptively mandatory," *coram nobis* is thus unwarranted. *See, e.g.*, *Dorfmann v.*

*United States*, 597 F. App'x 6, 8 (2d Cir. 2015) (summary order) (*coram nobis* petition denied, where "no evidence that [petitioner's] attorney ever misadvised him of the immigration consequences of his plea"); *Chhabra*, 720 F.3d at 407–08 (same, where defendant received "correct legal advice as to the deportation effects" of guilty plea and defense attorney's "overall performance with respect to the immigration consequences" of plea "did not fall below an objective standard of reasonableness"); *Marte*, 952 F. Supp. 2d at 540–41 (same, where defendant "affirmed his understanding of the deportation implications of his guilty plea during the plea allocution").

## CONCLUSION

For the above reasons, the Court denies Fernandez's petition. The Clerk of Court is respectfully directed to terminate all pending motions and close this case.

SO ORDERED.

Paul A. Engelmayer

PAUL A. ENGELMAYER
United States District Judge

Dated: July 28, 2026
New York, New York